IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| MARIA JOSE SUAREZ BOLIVAR, MARIA VANESSA SUAREZ BOLIVAR, EDNA PATRICIA AGUIRRE, and all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) CASE NO. ) |
| v. | ) ) JURY TRIAL DEMANDED ) |
| GLOBAL DIAGNOSTIC LABS LLC, | ) ) |
| Defendant. | ) ) ) ) |

## **COLLECTIVE ACTION COMPLAINT**

Plaintiffs, by and through the undersigned counsel, the law firms of McGillivary Steele Elkin LLP and Egan, Lev & Siwica, P.A., as their Collective Action Complaint against defendant, Global Diagnostic Labs LLC, and hereby state as follows:

## **INTRODUCTION**

1.  Plaintiffs bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) against defendant on behalf of themselves and all others similarly situated because of defendant's

unlawful deprivation of plaintiffs' rights to timely payment of overtime compensation under the FLSA.

2. Defendant Global Diagnostic Labs LLC violated the FLSA in the following ways: (1) failing to compensate plaintiffs for all hours of work performed before the official start time of their shift and after the official end time of their shifts, and (2) on some occasions failing to pay plaintiffs for all hours worked in excess of 40 hours in a workweek in a timely manner.

3. Plaintiffs bring this action for declaratory judgment, back pay, and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy defendant's willful and unlawful violations of federal law.

## PARTIES

4. Plaintiffs, named herein and all future plaintiffs (collectively referred to herein as "plaintiffs"), are and have been at all times material herein, employed by Global Diagnostic Labs LLC in the position of COVID-19 Tester and/or Manager.

5. Plaintiffs identified in the caption of the instant complaint have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consents are attached hereto as Exhibit A.

6. At all times material herein, all plaintiffs are similarly situated because they perform the same or similar job duties, work the same or similar

hours, and were all subject to defendant's unlawful pay policies and practices as described herein.

7. Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

8. At all times material herein, Plaintiff Maria Jose Suarez Bolivar worked as a Manager setting up and operating COVID-19 testing sites for defendant in Clearwater and Tampa, Florida.

9. At all times material herein, Plaintiffs Maria Vanessa Suarez Bolivar and Edna Patricia Aguirre worked as COVID-19 Testers in Tampa, Florida.

10. Defendant Global Diagnostic Labs LLC (originally organized as "Global 7 Diagnostics") has a principal office and place of business located at 4960 Peachtree Industrial Blvd., Norcross, Georgia 30071 and may be served with process by serving the Registered Agent, Daniel Lipton, at 4960 Peachtree Industrial Blvd., Norcross, Georgia 30071.

11. Global Diagnostic Labs LLC is a limited liability company amenable to suit under the FLSA in that it is, and was at all times material hereto, an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391. Defendant is engaged in substantial and not isolated activity in the state of Florida because it operates multiple COVID-19 testing sites throughout the state and within the jurisdiction of this Court.

## COLLECTIVE ACTION ALLEGATIONS

14. During the last three years, plaintiffs regularly worked in excess of 40 hours in a workweek and received one hour's worth of straight time pay for each hour of overtime in excess of 40 hours in a workweek.

15. The primary job duties of all plaintiffs were collecting COVID test samples from members of the public and recruiting people to take COVID tests at defendant's COVID-19 testing sites in Tampa, Florida and Clearwater, Florida.

16. Plaintiffs frequently performed additional job duties before the start of their scheduled shift and after the end of their scheduled shift including, but not limited to, transferring specimens to be tested and setting up additional testing sites.

17. Plaintiffs were not permitted meal or rest breaks and were required to remain at outdoor testing sites regardless of weather conditions.

18. All plaintiffs were scheduled to work a minimum of 60 hours per week.

19. At least one workweek per month, and often more than one workweek per month, all plaintiffs worked more than 40 hours. No plaintiffs set company policies, evaluated any other employees' performance, or had any authority to discipline, hire, or fire personnel.

<u>*Failure to Compensate Plaintiffs for All Hours Worked*</u>

20. Defendant failed and refused to compensate plaintiffs at a rate of time and one-half their regular hourly rate for all hours worked over 40 that defendant suffered or permitted plaintiffs to work.

21. At least one workweek per month, all plaintiffs performed their job duties outside of their regularly scheduled shifts, including before and after their shift, without any compensation.

22. Defendant had knowledge that plaintiffs worked over 40 hours per week because, among other things, defendant tracked plaintiffs' worktime through a timekeeping system, their supervisors and executives were informed about the work being performed (through investigators and direct communication with plaintiffs), and the nature of plaintiffs' job duties required them to work over 40 hours per week.

23. At least one workweek per month, all plaintiffs performed their job duties outside of their regularly scheduled shift, including before and after their scheduled shifts because aspects of their work, such as delivering test samples to

another employee for shipment and transporting test samples to FedEx for shipment were required to be performed after the testing site was closed for the day. Similarly, time spent setting up and opening the testing sites had to be performed before the testing sites opened at 8:00 am each day.

### *Maria Jose Suarez Bolivar*

24. Plaintiff Maria Jose Suarez Bolivar was employed as a Manager by defendant for nine months from December 2021 to September 2022 in Tampa and Clearwater, Florida. Ms. Suarez Bolivar's regularly scheduled hours were 8:00 am to 6:00 pm, seven days per week.

25. Every day, she set up a COVID-19 testing site in Tampa, Florida between 7:00 am and 7:15 am. Four to five days per week, after opening the testing site in Tampa, she also traveled to Clearwater to set up a testing site.

26. Ms. Suarez Bolivar worked more than 40 hours in a workweek. She performed her regular duties of recruiting people to get tested and collecting samples in addition to duties such as transporting COVID-19 testing samples to FedEx for shipment, fielding after-hours calls from patients regarding test results and from supervisors about various work matters, and performing duties necessary to ensure testing sites had the necessary supplies for the following day.

27. Ms. Suarez Bolivar was hired at an hourly rate of $12.00 per hour during training in December 2021 and was increased to $14.00 per hour thereafter. She was not paid a salary.

28. Ms. Suarez Bolivar did not have hiring or firing authority for defendant.

29. Ms. Suarez Bolivar did not set policy for defendant.

30. Defendant failed to pay Ms. Suarez Bolivar overtime compensation above her regular straight time rate, although the work she performed was observed by or known to supervisors. Defendant failed to properly compensate Ms. Suarez Bolivar even when the work performed was recorded in defendant's timekeeping system.

31. After the end of her scheduled shifts at 6:00 pm, Ms. Suarez Bolivar collected test samples from each testing site in the Tampa/Clearwater area for which she was responsible and took them to FedEx by 7:00 pm for delivery to defendant's headquarters in Atlanta for processing.

32. After leaving FedEx each evening, Ms. Suarez Bolivar was required to pick up materials to restock supplies at the testing sites.

33. Defendant's supervisors told Ms. Suarez Bolivar that she was "on call all the time," verbally reprimanding her when she did not respond to calls outside of her scheduled work hours.

34. Ms. Suarez Bolivar also fielded calls and exchanged texts with patients outside of scheduled work hours.

35. While working for defendant, Ms. Suarez Bolivar routinely worked more than 40 hours per week without receiving overtime compensation at the rate of one and one-half times her regular rate of pay for all hours worked over 40 in a workweek.

36. Defendant paid Ms. Suarez Bolivar late on at least three occasions.

*Maria Vanessa Suarez Bolivar*

37. Plaintiff Maria Vanessa Suarez Bolivar worked for defendant for more than nine months as a COVID Tester at a testing site in Tampa, Florida. Ms. Suarez Bolivar's regularly scheduled hours were 8:00 am to 6:00 pm seven days per week.

38. Approximately twice per month, defendant required Ms. Suarez Bolivar to set up an additional testing site after the end of her regularly scheduled shift, typically from 6:30 pm to 8:30 pm.

39. In or around March or May 2022, on a few occasions, defendant required Ms. Suarez Bolivar to work from 8:00 am to midnight or 8:00 am to 9:00 pm.

40. When Ms. Suarez Bolivar worked more than 40 hours in a workweek while performing these job duties, defendant failed to pay her any overtime

compensation above her regular straight time rate, although the work she performed was observed by or known to supervisors. Defendant failed to compensate Ms. Suarez Bolivar even when the work performed was recorded in defendant's timekeeping system.

41. Plaintiff Suarez Bolivar was hired at an hourly rate of $14.00 per hour and was increased to $16.00 per hour in March 2022.

42. Plaintiff Suarez Bolivar regularly started work at 8:00 am. Several times per month, she worked beyond her scheduled end time. On a few occasions she worked from 8:00 am to midnight, and on one occasion she worked from 8:00 am to 9:00 pm.

43. When Ms. Suarez Bolivar performed work activities after her regularly scheduled shift, it caused her to work additional hours in excess of 40 hours per week for which she was not compensated at the rate of one-and-one-half times her regular rate of pay.

44. Defendant terminated Plaintiff Suarez Bolivar's employment in September 2022 after she refused to set up a testing site in a shopping mall without proper authorization. When defendant previously required Plaintiff Suarez Bolivar to set up a testing site at this location once before, the police arrived and ordered her and other workers to stop their work because they lacked proper authorization to be there.

## *Edna Patricia Aguirre*

45.     Plaintiff Edna Patricia Aguirre was a COVID Tester employed by defendant for eight months from January 2022 to September 2022 in Tampa, Florida. Ms. Aguirre's regularly scheduled hours were initially 8:00 am to 5:00 pm and were subsequently changed to 8:00 am to 6:00 pm, seven days per week.

46.     Approximately three times per week, Plaintiff Aguirre had to show up at work at 7:00 am, an hour before her scheduled start time, to pick up COVID tests and/or to set up the testing site. Ms. Aguirre also regularly worked beyond the end of her shift (until 6:30 or 6:45 pm) to drop off completed COVID tests with Plaintiff Maria Jose Suarez Bolivar at a different testing site.

47.     Defendant failed to pay Ms. Aguirre any overtime compensation above her regular straight time rate for all hours worked over 40, although the work she performed was observed by or known to supervisors. Defendant failed to properly compensate Ms. Aguirre even when the work performed was recorded in defendant's timekeeping system.

48.     Plaintiff Aguirre was hired at an hourly rate of $12.00 per hour when she was training and was increased to $14.00 per hour in March 2022.

49.     Defendant paid Plaintiff Aguirre late on at least two occasions.

50.     On several occasions during the last three years, defendant delayed the payment of overtime compensation beyond the next pay period for which

plaintiffs were paid for their regularly scheduled work hours. Upon information and belief, the delay in payment was caused by reasons unrelated to defendant's ability to determine the amount of overtime compensation owed to plaintiffs.

51. The number of times this occurred, and the amount of overtime paid late, can be identified only by defendant through defendant's timekeeping records and through other work and pay records, which are exclusively in defendant's possession, custody, and control.

52. Indeed, the FLSA's late payment provisions were enacted specifically because employees are not expected to, nor are they able to, keep track of the hours for which overtime is earned in a given workweek and when the overtime is paid. This obligation falls exclusively on the employer, who must monitor to ensure that overtime is paid in a timely fashion.

## COUNT I

**FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS WERE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7 OF THE FLSA, 29 U.S.C. § 207**

53. Plaintiffs hereby incorporate by reference Paragraphs 1 through 52 in their entirety and restate them herein.

54. At all times material herein, at least one workweek per month, all plaintiffs worked hours in excess of 40 hours a week and performed work activities

before the start of their scheduled shifts and after the end of their scheduled shifts without overtime compensation.

55. At all times material herein, defendant failed to provide any compensation to plaintiffs for hours worked before the scheduled start time of their shifts. Defendant also failed to provide plaintiffs with compensation for work performed after the scheduled end time of their shifts and/or, to the extent defendant paid employees for time outside their scheduled hours of work, defendant failed to pay them at a rate of one and one-half their regular rates of pay.

56. Plaintiffs' work time is identifiable on defendant's internal timekeeping system and through other work and payroll records. However, plaintiffs were prevented from recording all of their work time in the timekeeping system when they worked unscheduled time. Accordingly, as a result of these pay practices, defendant failed to provide plaintiffs with the rights and protections provided under Section 7(a) of the FLSA, 29 U.S.C. § 207(a).

57. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours the employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay

requirements of the FLSA in the manner outlined herein by failing to compensate plaintiffs for work that they have been suffered or permitted to work before the start of their shift and after the end of their scheduled shifts.

58. Section 207 of the FLSA, 29 U.S.C. § 207 and U.S. Department of Labor regulations, 29 C.F.R. Part 778, *et seq.*, require that overtime compensation be paid to employees who work in excess of the hourly standards set forth therein.

59. Pursuant to 29 C.F.R. § 785.38, "[t]ime spent by an employee as part of her principal activity, such as travel from job site to job site during the work day, must be counted as hours worked." Accordingly, when plaintiffs travelled between job sites to perform additional work at an alternative location during or immediately following their regularly scheduled shift, such time must be compensated. Defendant failed to comply with the overtime pay requirements of Section 7 of the FLSA by failing to compensate plaintiffs for such travel time.

60. Section 207(a) of the FLSA, 29 U.S.C. § 207(a), requires defendant to pay each plaintiff one and one-half times their regular rate of pay for all hours worked over 40 in a workweek. Defendant violated section 7(a) of the FLSA, 29 U.S.C. §§ 207(a) by failing and refusing to compensate plaintiffs for their overtime work at the rate of one and one-half times their regular rate of pay, and instead compensating them at the rate of one hour of straight time for each hour of overtime worked.

61. As a result of defendant's willful and purposeful violations described herein, there have become due and owing to all plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for all plaintiffs are in the exclusive possession, custody and control of defendant, and plaintiffs are unable to state at this time the exact amount owing to them, but from these records, all plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a) and § 207(o). Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

62. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for defendant's failure to pay overtime compensation at all and defendant's failure to pay at the correct rate.

63. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS, OR EVEN MONTHS, AFTER THE OVERTIME WAS WORKED

64. Plaintiffs hereby incorporate by reference paragraphs 1 through 52 in their entirety and restate them herein.

65. The FLSA mandates that overtime compensation be paid on the regular payday for the period in which such workweek ends. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106; *Arroyave v. Rossi* 296 Fed. Appx. 835, 836 (11th Cir. 2008) (citing *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1945) (finding that liquidated damages are available under the FLSA to an employee if the employer failed to pay wages or overtime on the regular payment date)). Defendant has violated these basic principles by delaying plaintiffs' overtime payments for working in excess of 40 hours a week beyond the regular payment date on several occasions, with such delay not being reasonably necessary to compute plaintiffs' overtime pay.

66. Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and their withholding of such overtime payments violated section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

67. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their backpay damages for defendant's failure to pay overtime within the FLSA's prompt payment requirements.

68.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray that this Court:

(a)  Enter judgment declaring that defendant willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs of his and her rights;

(b)  Order a complete and accurate accounting of all the compensation to which plaintiffs are entitled;

(c)  Award plaintiffs monetary liquidated damages equal to their unpaid compensation;

(d)  Award plaintiffs interest on their unpaid compensation;

(e)  Award plaintiffs their reasonable attorneys' fees to be paid by defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Dated: May 23, 2023

Respectfully submitted,

*/s/ Heidi B. Parker*
Heidi B. Parker
Attorney No. 1008110
EGAN, LEV & SIWICA, P.A.
PO Box 2231
Orlando, FL 32802-2231
Phone: (407) 422-1400
hparker@eganlev.com

*/s/ David Ricksecker*
David Ricksecker (to be admitted *pro hac vice*)
Matthew D. Purushotham (to be admitted *pro hac vice*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
dr@mselaborlaw.com
mdp@mselaborlaw.com

*Counsel for Plaintiffs*