#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MARIA JOSE SUAREZ BOLIVAR et al., </br></br> Plaintiffs, </br></br> v. </br></br> GLOBAL DIAGNOSTIC LABS LLC et al., </br></br> Defendants. | CASE NO. 8:23-cv-01130-TPB-JSS |

#### JOINT MOTION FOR SETTLEMENT APPROVAL

Plaintiffs Maria Jose Suarez Bolivar, Maria Vanessa Suarez Bolivar, and Edna Patricia Aguirre ("Plaintiffs") and Defendants Global Diagnostic Labs LLC and Daniel B. Lipton ("Defendants") (collectively, the "Parties") respectfully submit this Joint Motion regarding the proposed Settlement Agreement ("Agreement") between the Parties in the above-referenced Fair Labor Standards Act (FLSA). As set forth below, the Parties believe that the Agreement is a fair and reasonable resolution of a *bona fide* dispute and should be approved by the Court.

**I.    BACKGROUND**

Plaintiffs Maria Jose Suarez Bolivar, Maria Vanessa Suarez Bolivar, and Edna Patricia Aguirre filed the instant action against the Defendants on May 23, 2023, alleging claims under the Fair Labor Standards Act (FLSA) for the time they allege they were employed by defendants at Global Diagnostic Labs LLC as COVID testers and Managers. Dkt. No. 1. Specifically, Plaintiffs allege that they regularly and routinely worked over 40 hours in a workweek but that Defendants failed to compensate them for all of these overtime hours at a rate of one and one-half times their regular rates of pay. Id., ¶¶ 14, 19. Plaintiffs further allege Defendants classified the plaintiffs as

independent contractors and did not pay them FLSA overtime. However, Plaintiffs allege that they were employees under the FLSA and entitled to FLSA time and one half overtime for all work hours over 40 hours in a workweek. *Id.*, ¶¶ 4, 7, 14, 19. Defendants deny all allegations. Dkt. No. 21, 22.

The Parties now submit the Settlement Agreement, attached hereto as Exhibit A, for the Court's consideration.

## II.     TERMS OF THE PROPOSED SETTLEMENT

The Settlement Agreement is attached hereto as Exhibit A for the Court's consideration. Paragraph 2 contains the allocation of funds as between the plaintiffs, as well as their counsel. Plaintiffs are receiving the full amount of their claim for unliquidated damages. *See* Dkt. Nos. 36-38.

Plaintiffs' counsel will distribute payments to plaintiffs each month in amounts proportional to the damages due to them under the settlement agreement.

In addition, the Settlement Agreement includes a mutual *limited* release of FLSA claims. Ex. A, ¶¶ 6-7. Further, the Parties have agreed that the Settlement Agreement is subject to Court approval and actions may be brought in a court of competent jurisdiction to enforce the terms of the agreement. *Id.* ¶9.

All three Plaintiffs have approved the Settlement Agreement, as have Defendants. *Id.*

## III.    APPLICABLE FACTORS FOR APPROVING FLSA SETTLEMENTS

The Eleventh Circuit has ruled that settlements of FLSA claims require court approval. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306-07 (11th Cir. 2013). When evaluating whether to approve a proposed FLSA settlement, a district court considers: the existence of collusion behind the settlement; the complexity, expense, and likely duration

of the case; the stage of the proceedings and the discovery completed; the probability of the plaintiff's success on the merits; the range of possible recovery; and the opinions of counsel. *Leverso v. SouthTrust Bank of Ala., Nat'l Ass'n*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994). The court should presume a settlement is fair and reasonable. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

## IV. THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

An analysis of the factors reviewed by district courts in the Eleventh Circuit demonstrates that the proposed settlement terms are fair and reasonable and should be approved by the Court. The Settlement represents a good faith compromise of the Parties' *bona fide* disputes regarding Plaintiffs' allegations that Defendants failed to properly compensate Plaintiffs for recorded overtime hours at one and one-half times their hourly rates. The Settlement also resolves a *bona fide* dispute regarding whether an award of liquidated damages is appropriate on these claims and the amount of such damages. Plaintiffs' counsel shared their damages calculations under Plaintiffs' theories with counsel for the Defendants, and the Parties used this data to negotiate a fair settlement. This compromise was reached after arm's-length negotiations.

### A. The Settlement Agreement Was the Result of Arms-Length Negotiations

Counsel for the parties engaged in arms-length negotiations to reach the proposed settlement terms. This included proceeding through court-sponsored mediation, which included the direct participation of the parties. The parties continued to exchange settlement offers in the subsequent months. At no point did counsel for the plaintiffs or defendants collude against the interests of their clients to reach the terms in the proposed settlement.

### B. The Complexity, Expense, and Likely Duration of the Litigation

There is no doubt that continued litigation would be long, arduous, and costly, with the risk that Plaintiffs may recover substantially less than what they are recovering here. While Plaintiffs strongly believe that their overtime claims have merit, Defendants dispute these claims, including the hours Plaintiffs claim to have worked as well as Plaintiffs' claim that they were improperly classified as independent contractors. Without this settlement, the Parties would need to spend significant amounts of time and expense to undertake formal written discovery, depositions, summary judgment briefing, pre-trial briefing, trial preparation, trial, and any post-trial appeal efforts. In addition, Maria Jose Suarez Bolivar and Maria Vanessa Suarez Bolivar's claims in this matter have been referred to arbitration, while Plaintiff Edna Patricia Aguirre's claims have remained with the district court. Thus, the parties would have to proceed in two different forums to resolve all plainitffs' claims. This settlement provides significant monetary relief to Plaintiffs now, including full backpay, without the risk and expense of continued litigation.

### C. The Stage of the Proceeding and the Amount of Discovery Completed

Although full discovery has not begun, the Parties nevertheless exchanged preliminary discovery in the form of payroll and timekeeping records and damages models. The Parties also engaged in multiple email exchanges regarding Plaintiffs' damages calculations. This permitted the Parties to responsibly resolve this dispute in an informed manner. Accordingly, this factor weighs in favor of approval.

### D. The Probability of the Plainitffs' Success on the Merits

Although both sides believe their legal position is strong, there is no guarantee of success for either side. Although Plaintiffs believe they should easily be able to establish that Defendants failed to compensate them for recorded hours above 40 in a workweek at one and one-half times

their regular rates of pay, there is a risk that the Court or a jury would disagree and/or not find them covered by the FLSA. In addition, the Parties dispute whether Plaintiffs are entitled to liquidated damages under the FLSA.

Given these risks, the Parties' compromise Settlement Agreement reflects full backpay to Plaintiffs for every hour of their allegedly recorded but underpaid overtime work, plus an additional amount representing liquidated damages. A two-year recovery period was used to calculate damages.

### E. The Range of Possible Recovery

As noted above, although Plaintiffs believe that they will easily be able to establish damages for Plaintiffs' allegedly recorded but underpaid overtime, there is a risk that the Court or a jury would disagree and/or find that the plaintiffs were not employees covered by the FLSA. In addition, Plaintiffs will need to establish their entitlement to liquidated damages under the FLSA. Under the FLSA, although an award of liquidated damages equal to the backpay is the "norm," a Court can decline to award liquidated damages if the employer can demonstrate that it acted in good faith and with reasonable grounds for believing that its act or omission was not a violation of the law. 29 U.S.C. § 260; *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941-42 (8th Cir. 2008) (under the FLSA, "Double damages are the norm, single the exception."). Further, the defendants have asserted that they lack the financial ability to pay a larger settlement, as well as a lump-sum settlement, casting doubt on the plaintiffs' ability to quickly recover a larger judgment even if they were to proceed through arbitration/trial and prevail.

The Defendants are a small business and the company's individual owner. Defendants advised Plaintiffs of their financial difficulties in the context of their settlement negotiations, including what they believed was their inability to satisfy a large lump-sum settlement; as such,

5

the parties negotiated an installment payout. Defendants simply do not have deep pockets. As such, it is in both Parties' best interest to settle now for the reasonable compromise amount to which the Parties have agreed, but for this reason it is equally important that the Court retain jurisdiction to enforce the agreement if the monthly installment payments are not made.

### F. The Opinions of Counsel Regarding the Reasonableness of the Settlement in Light of the Best Possible Recovery and Risks of the Litigation

Significantly, the Settlement provides a total of $30,000.00 in backpay and liquidated damages to the three Plaintiffs. For each Plaintiff, this amount represents 100% of the best estimate of the backpay allegedly owed for overtime hours which were paid at the straight time rate instead of at one and one-half times their regular rates of pay, for a two-year recovery period. Considering the risks associated with trying the Plaintiffs' claims, including liquidated damages, and the precarious financial situation of the defendants, counsel for the parties believe this settlement amount is certainly reasonable, if not an excellent result for the plaintiffs.

## V. PLAINTIFFS' ATTORNEYS' FEES AND ACTUAL LITIGATION EXPENSES SHOULD BE APPROVED

Section 216(b) of the FLSA provides that the "court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *Batt v. Micro Warehouse, Inc.,* 241 F.3d 891, 893 (7th Cir. 2001) (citing *Bankston v. Ill.,* 60 F.3d 1249, 1255 (7th Cir. 1995)). Where, like here, a settlement of FLSA claims includes the payment of attorney's fees, the Court must also assess the reasonableness of the fee award.

In determining whether a fee is reasonable, courts look to the lodestar, meaning "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

Here, Defendants have agreed to Plaintiffs' allocation of fees in the amount of $12,000.00. The Settlement Agreement therefore reimburses Plaintiffs for their expenses and provides Plaintiffs' counsel with a portion of their time incurred litigating these FLSA claims. Significantly, Defendants do not oppose the allocation of fees and costs in this amount and agree the amount is reasonable, for purposes of approval.

Although the case reached settlement before any significant discovery or post-discovery briefing had occurred, Plaintiffs' Counsel spent substantial time researching Plaintiffs' claims, drafting the Complaint and amended complaint, reviewing payroll and timekeeping documents, researching and briefing the issue of whether plaintiffs claims should be referred to arbitration, creating and revising damage calculations, participating in the initial status conference, participating in a number of negotiation sessions and communications with Defendants' counsel (including mediation), discussing the settlement with Plaintiffs, drafting the Settlement Agreement and negotiating over its terms with Defendants, and drafting the instant motion. To date, Plaintiffs' counsel have not been paid for any of that work.

Plaintiffs' counsel undertook to prosecute this action without any guarantee of payment and was required to make an investment of time and resources without a guarantee of any kind. Plaintiffs' counsel's expertise greatly benefited Plaintiffs. Plaintiff's counsel's firm, McGillivary Steele Elkin LLP is supported by diligent, hard-working attorneys and paralegals who helped bring the case to a favorable resolution for the Plaintiff. Similarly, Ms. Parker and Mr. Siwica have significant experience as counsel in FLSA collective action and wage and hour cases in federal courts in Florida.

### A. Degree of Success Obtained

As set forth above Plaintiffs have obtained significant success. Indeed, the settlement reflects full backpay to Plaintiffs for every hour of their allegedly underpaid overtime work,. A two-year recovery period was used to calculate damages. This level of success supports approval of the Parties' settlement.

### B. Public Interest Advanced by the Litigation

The provision for attorneys' fees in the FLSA is intended to encourage attorneys to provide legal services to individuals whose claims may be too small to justify the retention of able legal counsel. Here, Defendants agreed to allocate $12,000.00 of the total settlement proceeds as legal fees and costs. Without the ability to collect these fees otherwise, the remedial purpose of the FLSA would not be fulfilled, as attorneys may be unable to bring such cases. *See Hoffman-LaRoche v. Sperling,* 493 U.S. 165, 173 (1989) ("The broad remedial goal of [the FLSA] should be enforced to the full extent of its terms."). Thus, this factor also weighs in favor of approval.

## VI. CONCLUSION

For all the above reasons, the Parties believe that this Settlement is a fair and reasonable compromise of Plaintiffs' overtime pay claims asserted against the Defendants that are the subject matter of this litigation. Accordingly, the Parties respectfully submit that the Settlement, in its entirety, is fair and reasonable and should be approved.

Dated: 05/07/2024

                Respectfully submitted,

                */s/ David Ricksecker*
                David Ricksecker *(admitted pro hac vice)*
                Matthew D. Purushotham (*admitted pro hac vice*)
                McGILLIVARY STEELE ELKIN LLP
                1101 Vermont Ave., N.W.
                Suite 1000
                Washington, DC  20005
                Phone: (202) 833-8855
                dr@mselaborlaw.com
                mdp@mselaborlaw.com

                /s/*Richard Siwica (with consent)*
                Richard Siwica,
                EGAN, LEV & SIWICA, P.A.
                P.O. Box 2231
                Orlando, FL 32802-2231
                Phone: (407) 422-1400
                rsiwica@eganlev.com

                *Counsel for Plaintiffs*


                */s/Daniel Levine (with consent)*
                DANIEL R. LEVINE, ESQ.
                Florida Bar No. 0057861
                E-mail: DRL@PBL-Law.com
                ROBIN I. FRANK, ESQ.
                Florida Bar No. 0649619
                E-mail: RIF@PBL-Law.com
                PAULA BENNARDO LEVINE LLP
                3837 NW Boca Raton Blvd., Suite 200
                Boca Raton, FL 33431
                Telephone: (561) 544-8900

                *Counsel for the Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2024 I served a true and correct copy of the foregoing document via the Court's electronic filing system, which will send electronic notice to all counsel of record.

*/s/ David Ricksecker*
David Ricksecker
